## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTUAN WHITE,<br>    *Plaintiff*, | |
| v. | No. 3:20-cv-00720 (JAM) |
| BROWN *et al.*,<br>    *Defendants*. | |

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Antuan White is a parolee currently under the supervision of the Connecticut

Department of Correction ("DOC") and was a state prisoner at the time he filed the complaint in

this action. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 and

state tort law. White alleges claims arising from his arrest and handcuffing in October 2017 by

police officers in Orange, Connecticut. After an initial review, I conclude that the complaint shall

proceed in part and will be dismissed in part with leave to amend.

### BACKGROUND

The following allegations from White's complaint are accepted as true solely for the

purposes of the Court's initial review. White names five defendants: Officer Chris Brown,

Officer Basil Lu, Lieutenant Heather LaRock, Chief of Police Robert Gagne, and the Town of

Orange. Doc. #13 at 1-4.[1]

On the night of October 12, 2017, White was approached in his car and aroused by

Officers Brown and Lu of the Orange police department, along with several emergency

personnel. *Id.* at 5 (¶ 13). Officer Brown told White that he was dispatched to do a welfare check

---

[1] Notwithstanding White's designation of Orange in his complaint as the "City of Orange," the Court takes judicial
notice that Orange is a town in Connecticut.

on an "unknown male passed out inside a motor vehicle in the middle of the roadway on Fernbrook Road." *Id.* at 5 (¶ 14). Officer Brown asked White if had been drinking at any time during the day. *Id.* at 5 (¶ 15). White stated that he was not drinking but was coming from a co-worker's house, had a long day at work, and was very tired. *Id.* at 5 (¶ 16). Officer Brown asked White to step out of the vehicle to give him a field sobriety test. *Id.* at 5 (¶ 17). He asked White to stand on one leg with his arms out straight. *Id.* at 5 (¶ 19). White made several attempts but had difficulty with the test because he was tired. *Id.* at 5 (¶ 20).

Officer Brown then placed White under arrest for a D.U.I. *Id.* at 5 (¶ 21). Officer Brown applied the handcuffs to White's wrists in a manner that was "excessively tight." *Id.* at 5 (¶¶ 22-23). In supplemental information filed with the Court, White asserts that Officer Brown also failed to "double lock" the handcuffs. Doc. #21 at 4.

Officer Lu watched Officer Brown's "improper[] and negligent[]" application of the handcuffs to White, but "never once attempted to correct" Officer Brown. Doc. #13 at 5-6 (¶ 24). White states that he willingly cooperated with the officers and complied with all commands at all times during the incident. *Id.* at 5 (¶ 18). White "never resisted or became combative" towards Officers Brown and Lu, explaining to the officers that he had done nothing wrong and asking why he was being arrested. *Id.* at 6 (¶ 25).

Officer Brown then placed White in the back of the police cruiser. *Id.* at 6 (¶ 26). White complained that he could not fit in the back of the cruiser and asked for assistance. *Id.* at 6 (¶¶ 26-27). Officer Brown told White that he had had "bigger people" than White fit inside the cruiser and then assisted White. *Id.* at 6 (¶ 27). White was in "excruciating pain" and yelled and screamed at the officers. *Id.* at 6 (¶ 28). White asserts that the handcuffs were so "excessively tight" on his right wrist that they stopped his blood circulation. *Ibid.* In supplemental information

2

White filed with the Court, White asserts that the handcuff on his right wrist became tighter once he was detained in the back seat of the cruiser. Doc. #20 at 4 (¶ 28).

White continued to ask the officers to adjust the handcuffs for better comfort, but the officers ignored his request, instead talking to each other and laughing and staring at White while he was in pain. Doc. #13 at 6-7 (¶¶ 29-30). After an "unreasonable amount of time," Officers Brown and Lu then adjusted the handcuff on White's right wrist, but White asserts that the tight handcuff had already caused "permanent nerve damage and fracture" to his right hand, fingers, wrist, and arm. *Id.* at 7 (¶ 31).

The next morning White was still detained at the Orange police department and was preparing to be transferred to the Derby Superior Court for arraignment on the D.U.I. charge. *Id.* at 7 (¶ 34). While at the department, White requested immediate medical attention due to the pain he experienced from the incident the night before. *Id.* at 7 (¶ 35). Two police officers responded to White and documented his injuries. *Id.* at 8 (¶¶ 36-37).

White was taken to Yale New Haven Hospital by ambulance. *Id.* at 8 (¶¶ 39-40). At the hospital, White was treated for injuries to his right hand and wrist, was prescribed a wrist splint and medication, and was discharged. *Id.* at 8 (¶ 41).

On September 18, 2019, White filed a civilian complaint with the Orange police department against Officers Brown and Lu for the use of excessive force. *Id.* at 9 (¶ 49). Lieutenant LaRock and Chief of Police Gagne found White's complaint of excessive force to be "unfounded." *Id.* at 9 (¶ 50).

White alleges ongoing pain in his right hand and wrist. *Id.* at 9 (¶ 53). He seeks compensatory and other money damages. *Id.* at 18.

3

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).[2]

### Excessive force

White alleges that Officer Brown and Officer Lu used excessive force. The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because one of the purposes of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. *See Hamlin v. City of Waterbury, et al.*, 2017 WL 4869116, at *1 n.1 (D. Conn. 2017). Accordingly, because this ruling allows the federal law claims to proceed against Officers Brown and Lu, it likewise allows the related state law claims to proceed against these two defendants as well. The Court also notes that White has filed supplemental information about his negligence claim against Officers Brown and Lu. Doc. #20; Doc. #21.

effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated if the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989).

As the Supreme Court explained in *Graham v. Connor*, whether police officers' use of force is "excessive" must be judged by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). A court must give "careful attention to the facts and circumstances of each particular case," including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

In cases alleging that a defendant officer placed handcuffs on an arrestee in a manner that caused injury, the question is "whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled [his] distress, verbally or otherwise, such that a reasonable officer would have been aware of [his] pain, or both." *Ibid.* (citations omitted).

In making this inquiry, a court judges an officer's awareness "from the perspective of a reasonable officer on the scene." *Ibid.* (quoting *Graham*, 490 U.S. at 396). Officers are liable not only if they use excessive force themselves, but also if they fail to intervene to stop the excessive

use of force by another officer when in a position to observe the conduct and with time to

intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

Taking White's allegations as true, each of the *Graham* factors weighs in his favor.

Officers Brown and Lu had responded to a call about an individual passed out in a parked car

and arrested White for a D.U.I. White did not pose an immediate threat to the safety of the

officers or others; on the contrary, White cooperated with the officers and complied with their

commands at all times, and did not resist arrest or attempt to flee. Moreover, White yelled and

screamed in pain to Officers Brown and Lu and repeatedly asked them to adjust his handcuffs,

which the officers ignored while standing outside the police cruiser "laughing and staring" at

White. Doc. #13 at 6-7 (¶¶ 28-30). While Officers Brown and Lu eventually adjusted the

handcuff on White's right wrist, the alleged damage had already been done. And while White

alleges that it was Officer Brown, not Officer Lu, who handcuffed him, White sufficiently

alleges Officer Lu's personal involvement, as Officer Lu was present during the incident and

failed to intervene to stop Officer Brown or to help White despite having the reasonable

opportunity to do so. Doc. #13 at 5-6 (¶ 24). Given that White directly and verbally

communicated his pain to Officers Brown and Lu, a reasonable officer would have been aware of

his pain. Accordingly, I will permit White's Fourth Amendment claim against Officers Brown

and Lu in their individual capacities to proceed.

White also alleges excessive force claims under the Eighth and Fourteenth Amendments.

But in *Graham*, the Supreme Court ruled that "[w]here, as here, the excessive force claim arises

in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized

as one invoking the protections of the Fourth Amendment." 490 U.S. at 394; *see also Cugini*,

941 F.3d at 612 (declining to consider due process claim for excessive force claim of arrestee

that was subject to analysis under the Fourth Amendment); *Bonilla v. Jaronczyk*, 354 Fed. App'x

579, 581 (2d Cir. 2009) (excessive force claim by convicted prisoner alleging abuse by

correctional officers subject to review under Eighth Amendment not Fourth Amendment).

Accordingly, I will dismiss his claims under the Eighth and Fourteenth Amendment.

### *Claims against supervisors*

White alleges liability against Lieutenant LaRock and Chief of Police Gagne on the basis

of their rejection of his citizen complaint about Officers Brown and Lu. A defendant may not be

held personally liable for damages under § 1983 "merely because he held a high position of

authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Instead, "a plaintiff must show,

*inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."

*Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A supervisory official may be

liable under § 1983 if he (1) "participated directly in the alleged constitutional violation,"; (2)

"after being informed of the violation through a report or appeal, failed to remedy the wrong";

(3) "created a policy or custom under which unconstitutional practices occurred, or allowed the

continuance of such a policy or custom"; (4) "was grossly negligent in supervising subordinates

who committed the wrongful acts"; or (5) "exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Lombardo v. Graham*, 807 F. App'x 120, 124 (2d Cir. 2020) (citing *Colon v. Coughlin*, 58 F.3d

865, 873 (2d Cir. 1995)).

After White filed a civilian complaint about Officers Brown and Lu, Lieutenant LaRock

and Chief Gagne found his excessive force claim to be unfounded. Doc. #13 at 9 (¶ 50); *see also*

Doc. #13, Ex. M. In Count Five, White claims that Lieutenant LaRock and Chief Gagne "sought

to validate" Officers Brown and Lu's actions and "permitted, encouraged, tolerated, and ratified

a pattern of practice of unjustified, unreasonable, and excessive force" in the handcuffing of individuals done by police officers. Doc. #13 at 14 (¶¶ 82-85). White also alleges that had Lieutenant LaRock and Chief Gagne "diligently exercised [their] duties to instruct, supervise, control, and discipline on a continuing basis," they "should have had knowledge that the wrongs conspired to be done . . . were about to be committed." *Id.* at 14 (¶ 85).

White makes conclusory statements but pleads no facts indicating that Lieutenant LaRock and Chief Gagne participated directly in the use of excessive force or that they created or encouraged a policy or custom of using excessive force in handcuffing individuals. The most that can be said based on the complaint is that Lieutenant LaRock and Chief Gagne were informed of White's excessive force complaint against Officers Brown and Lu, found it to be unfounded, and did not act on it further. *See* Doc. #13, Ex. M.

The fact that they did not credit White's later claim of wrongdoing by police officers is not enough to conclude that they had personal involvement in the violation of White's rights in the first place. "Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim." *Candelaria v. Higley*, 2008 WL 478408, at *2 (W.D.N.Y. 2008). Moreover, a complainant does not have a constitutional right to an adequate investigation of complaints made to a police department. *See Salaman v. City of New Haven*, 2019 WL 2231223, at *5 (D. Conn. 2019). Accordingly, I will dismiss White's claims against Lieutenant LaRock and Chief Gagne.

### *Claims against the Town of Orange*

White alleges that the Town of Orange should be liable for its officers' use of excessive force.  Under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), a municipality is not liable for the unconstitutional actions of its employees under a theory of

*respondeat superior*. Instead, *Monell* provides that a municipality may be vicariously liable for unconstitutional police misconduct only if the misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (describing scope and limitations of municipal liability under *Monell*).

White alleges in a conclusory fashion that the Town of Orange, through the implementation of a custom, policy, or official act, "failed to instruct, supervise, control, and discipline on a continuous basis" Officers Brown and Lu to refrain from using excessive force on citizens during or after making an arrest or conspiring to violate an individual's rights. Doc. #13 at 10 (¶¶ 55-60). White asserts that the Town of Orange displayed "deliberate indifference" to his constitutional rights because of its policy and custom. *Id.* at 10 (¶ 60). In supplemental information filed with the Court, White has submitted the Orange police department's general order on its "Handcuff and Restraint Policy," which states that all handcuffs must "double lock." *See* Doc. #21, Ex. C. White asserts that Officer Brown failed to "double lock" the handcuffs when handcuffing White. Doc. #21 at 4.

White has not alleged sufficient facts to plausibly suggest that any use of excessive force against him was the product of any policy, custom, or practice that pervades the Town of Orange's police department. He does not point to any specific training deficiency or any manner in which lack of supervisory oversight caused Officers Brown and Lu to act as they did. Accordingly, I will dismiss White's claims against the Town of Orange.

*Official capacity claims*

White has sued all individual defendants in both their official and individual capacities. "A claim against a municipal officer in his or her official capacity is, in essence, a claim against the city for which he or she works." *Atkinson v. Norwalk Police Dep't*, 2019 WL 108877, at *2 (D. Conn. 2019) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Because White has not alleged facts sufficient to state a claim for municipal liability, he similarly has not stated a factual basis for a claim against the individual police defendants in their official capacities. *See ibid.* Accordingly, although I will allow White's individual-capacity claims against Brown and Lu to proceed, I will dismiss all official-capacity claims.

CONCLUSION

For the reasons set forth above, White's Fourth Amendment claim and the associated state law claims against Officers Brown and Lu shall proceed against them in their individual capacity. The Court otherwise DISMISSES all other claims and defendants.

It is so ordered.

Dated at New Haven this 4th day of December 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge