## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTUAN WHITE, | ) | 3:20-CV-00720 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRIS BROWN and BASIL LU, | ) | |
| *Defendants*. | ) | February 13, 2023 |

## RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this civil rights and state law tort action, Plaintiff Antuan White alleges that Defendants Chris Brown and Basil Lu, officers of the Orange, Connecticut, Police Department, violated his rights by handcuffing him too tightly during his October 12, 2017, arrest. Plaintiff's amended complaint asserts claims for excessive force in violation of the Fourth Amendment, which he brings pursuant to 42 U.S.C. § 1983; state law assault and battery; and state law negligence. Defendants now seek summary judgment on each claim, arguing that no reasonable jury could find in favor of Plaintiff, and that qualified immunity and state law discretionary act immunity shield them from certain of Plaintiff's claims. Plaintiff opposes summary judgment and, in doing so, attempts to characterize his complaint as asserting an additional claim for malicious prosecution.

The Court finds that genuine issues of material fact preclude summary judgment on each of Plaintiff's claims. Accordingly, Defendants' motion is DENIED. The Court will not, however, allow Plaintiff's proposed malicious prosecution claim to proceed.

## I.      FACTUAL BACKGROUND

Unless otherwise noted herein, the parties agree on the following facts.[1]  On October 12, 2017, Defendants—who, at all relevant times, were employed as police officers for the Town of Orange, Connecticut—were dispatched to perform a welfare check on Fernbrook Road in Orange.  Pl.'s L. R. 56(a)2 St., ECF No. 53-8, ¶¶ 3, 4.  The welfare check was precipitated by a 911 caller's report of a male passed out behind the wheel of a car parked in the middle of the road.  *Id.* ¶ 4.  Portions of Defendants' encounter with Plaintiff were recorded by Defendants' body worn cameras.  *See* ECF No. 50 (notice of manual filing of footage from Brown's and Lu's body worn cameras, which is referenced as Exhibits E and F to Defendants' summary judgment motion, ECF No. 49); *see also* ECF No. 62 (Plaintiff's notice of manual filing of body worn camera footage).

When Defendants arrived on the scene, they observed a stopped 2016 Chrysler 300S running with its brake lights on.  Pl.'s L. R. 56(a)2 St. ¶ 5.  Defendants approached the vehicle and observed a shirtless male, later identified as Plaintiff, unconscious in the driver's seat.  *Id.* ¶ 6.[2]  The parties agree, and the body worn camera footage shows, that Defendant Brown knocked on the vehicle's driver's side window, but Plaintiff remained unconscious and did not respond.  *Id.* ¶ 7; *see* Ex. E to Mot.  Brown then opened the vehicle's driver's side door, put the vehicle in park, and turned the vehicle off.  Pl.'s L. R. 56(a)2 St. ¶ 7.

After opening the vehicle's door, Brown continued his efforts to wake Plaintiff and was ultimately able to do so.  *Id.* ¶ 8.  Upon waking Plaintiff, Brown asked him if he was alright or needed assistance.  *Id.* ¶ 9.  Initially, Plaintiff's response was mumbled and incoherent, and

---

[1] Along with their reply brief, Defendants submitted a response to the Statement of Additional Material Facts submitted with Plaintiff's L. R. 56(a)2 Statement.  *See* ECF No. 56-1.  The Court's Local Rules do not contemplate this type of filing, so the Court will not consider it.

[2] While Plaintiff admits that he was unconscious, he claims that he was merely "asleep."  Pl.'s St. of Add'l Mat. Facts, ECF No. 53-8, ¶ 1.

Defendants were unable to understand him, *id.* ¶ 10; they also observed drool on Plaintiff's chin, *id.* ¶ 11. Based on Defendants' observations, and in light of Plaintiff's difficulty communicating, Brown performed a horizontal gaze nystagmus test while Plaintiff remained seated in the vehicle. *Id.* ¶ 12. Both Defendants observed that Plaintiff was unable to follow the stimulus with his eyes. *Id.* ¶ 13. Brown then asked Plaintiff to step out of the vehicle, and Plaintiff complied with this request. *Id.* ¶ 14. Defendants assert that they were able to smell the odor of an alcoholic beverage on Plaintiff; Plaintiff, however, denies this, claiming that he did not drink any alcoholic beverages on the night of October 12, and that alcohol is odorless. *Id.* ¶ 15.

After Plaintiff exited the vehicle, Brown asked him to perform standardized field sobriety tests, and Plaintiff agreed to do so. *Id.* ¶ 16. These tests are recorded on the body worn camera footage. *See* Exs. E & F to Mot. Prior to beginning these tests, Brown asked Plaintiff if he had any handicaps that would prevent him from taking the tests; Plaintiff stated that he did not. Pl.'s L. R. 56(a)2 St. ¶ 17; Brown Aff., ECF No. 49-4, ¶ 14. Brown then performed a second horizontal gaze nystagmus test on Plaintiff, and both Defendants observed indications of a lack of sobriety, including a lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees in both of Plaintiff's eyes. Pl.'s L. R. 56(a)2 St. ¶ 18.

Brown next explained and demonstrated a "walk and turn" sobriety test for Plaintiff; after Brown did so, Plaintiff stated that performing the test "would be hard." *Id.* ¶ 19. While performing this test, Plaintiff lost his balance, failed to place his feet heel to toe, stepped off the line he was supposed to walk, raised his arms, and took an incorrect number of steps. *Id.* ¶ 20. Brown subsequently explained and demonstrated the "one leg stand" sobriety test. *Id.* ¶ 21. While performing this test, Plaintiff swayed, used his arms for balance, and put his foot down. *Id.* ¶ 22.

After Plaintiff failed the standardized field sobriety tests, Brown informed him that he was being placed under arrest for driving under the influence and asked him to put his hands behind his back.  *Id.* ¶¶ 23–24; Brown Aff. ¶ 22.  Plaintiff did not physically resist arrest, but the parties dispute whether he argued with Defendants and disobeyed Brown's instructions; Defendants assert that he did, while Plaintiff asserts that he complied with Defendants' instructions and merely "explained his position to officers."  Pl.'s L. R. 56(a)2 St. ¶¶ 25–26.

The initial handcuffing is depicted on the body worn camera footage.  Exs. E & F to Mot. Once Plaintiff's hands were behind his back, Brown applied handcuffs to Plaintiff's wrists.  Pl.'s L. R. 56(a)2 St. ¶ 28.  The parties dispute whether Defendants initially handcuffed Plaintiff in a manner that was painfully tight.  *Id.* ¶ 29; Pl.'s St. of Add'l Mat. Facts ¶ 5.  The parties agree that, after handcuffing Plaintiff, Brown asked Defendant Lu to shine his flashlight on Plaintiff's wrists, but they dispute whether Defendants "double locked" the handcuffs.  Pl.'s L. R. 56(a)2 St. ¶ 30. The parties generally refer to "double locking" as a method officers employ to ensure that, once handcuffs are placed on an individual, they do not tighten further.  Plaintiff claims that the handcuffs were not double locked, which allowed them to continue to tighten.  *Id.*  Defendants assert that Plaintiff did not communicate to them—verbally or nonverbally—while being handcuffed that the handcuffs were too tight or that he was in pain or injured.  *Id.* ¶ 31.  Plaintiff does not dispute this point with respect to the period of time when Defendants were first applying the handcuffs.  As discussed below, however, he claims that he complained in the minutes after the handcuffs were first applied.  *Id.*

After handcuffing Plaintiff, Defendants escorted him to the rear of Lu's police vehicle.  *Id.* ¶ 32.  Brown guided Plaintiff to the rear passenger door, where Plaintiff was placed in the backseat of the police vehicle.[3]  *Id.* ¶ 33.  Brown then closed the police vehicle's door.  *Id.* ¶ 35.

The parties hotly dispute whether Plaintiff complained about the handcuffs from inside Lu's vehicle.  *Id.* ¶ 36.  Defendants contend that Plaintiff never communicated, either verbally or nonverbally, that the handcuffs were too tight, that he was in pain, or that he was injured.  *Id.* ¶¶ 36, 38.  Defendants further contend that they never heard Plaintiff yelling from Lu's vehicle while the vehicle remained at the scene of Plaintiff's arrest, before Plaintiff was taken to Orange Police Department to be booked and processed.  *Id.* ¶¶ 36, 37.

By contrast, Plaintiff claims that, about thirty seconds after he was placed in Lu's vehicle, he began to verbally express that he was feeling pain because of the handcuffs, which were too tight and became "excessively tighter" because they were not double locked.  *Id.* ¶¶ 31, 36.  He contends that he yelled for three or four minutes before Defendants, who were approximately six or seven feet from the vehicle, responded.  *Id.* ¶ 31; Pl.'s St. of Add'l Mat. Facts ¶¶ 9, 10.  Instead of helping, Plaintiff claims Defendants laughed at him and ignored his requests.  Pl.'s L. R. 56(a)2 St. ¶¶ 31, 38.  Plaintiff further claims that, after an "excessively long period of time elapsed" when he was "yelling and complaining," Defendants returned to the back of Lu's vehicle and loosened the handcuffs before leaving the scene.  *Id.* ¶ 36; Pl.'s St. of Add'l Mat. Facts ¶ 13.  According to

---

[3] The parties dispute precisely how this occurred.  Defendants assert that, after Plaintiff sat partially on the backseat of the vehicle, he "requested that Officer Brown assist him with placing his feet in the vehicle and Officer Brown did." *See* Pl.'s L. R. 56(a)2 St. ¶¶ 33–34.  By contrast, Plaintiff claims that, after he told Defendants that he could not fit in the vehicle, Brown "joked" to him that bigger people than Plaintiff had fit and then "forced" Plaintiff's legs into the vehicle.  *Id.* ¶ 34.  Plaintiff further claims that, as Defendants "awkwardly" placed him in the vehicle feet-first, the handcuffs on his wrists became progressively tighter.  Pl.'s St. of Add'l Mat. Facts ¶ 7.

Plaintiff, by the time Defendants adjusted the handcuffs, he was already injured, and he has had pain in his right wrist since his arrest.  Pl.'s St. of Add'l Mat. Facts ¶¶ 14, 15.[4]

The parties agree that, at the time of the incident, the Orange Police Department's squad cars had cameras in them.  *Id.* ¶ 35.  To the extent Plaintiff was recorded on such a camera while inside Lu's police vehicle, that footage is not before the Court.  As discussed below, Plaintiff claims Defendants spoliated the squad car video.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action in May of 2020 by filing a *pro se* complaint against Defendants Brown and Lu, two other municipal employees, and the Town of Orange.  Compl., ECF No. 1.  Plaintiff later filed an amended complaint against the same defendants.  Am. Compl., ECF No. 13; *see* ECF No. 9.  In December of 2020, the Court (Meyer, J.) entered an initial review order allowing Plaintiff's Fourth Amendment excessive force claim (Count Two) and associated state law claims (Counts Four and Seven) to proceed against Defendants Brown and Lu in their individual capacities, but dismissing each of Plaintiff's other claims.  ECF No. 24.  Plaintiff's counsel appeared in this action in October of 2021, ECF No. 32, and this case was subsequently transferred to the undersigned.  Following the completion of discovery, Defendants Brown and Lu filed the present motion for summary judgment, ECF No. 49.

## III.    LEGAL STANDARD GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and

---

[4] Plaintiff also cites to testimony and other evidence regarding the time period after he arrived back at the Orange Police Department, including evidence regarding complaints he purportedly made at the police department, the injury he purportedly suffered, and treatment and diagnoses he claims he received.  *See* Pl.'s St. of Add'l Mat. Facts ¶¶ 16–34.  Defendants object to the admissibility of this evidence on grounds including relevance and hearsay.  For purposes of this ruling, the Court finds that—even without considering this additional evidence—questions of material fact preclude summary judgment on Plaintiff's claims.  Accordingly, at this stage, the Court declines to decide the admissibility of this evidence.

the movant is entitled to judgment as a matter of law."  With respect to materiality, a fact is "material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).  The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

If the non-movant fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## IV.   COUNT TWO:  FOURTH AMENDMENT EXCESSIVE FORCE

The Court begins by rejecting Defendants' argument that they are entitled to summary judgment on Count Two, Plaintiff's section 1983 claim alleging excessive force in violation of his Fourth Amendment rights.

### A.   Merits of Plaintiff's Claim

First, the Court concludes that questions of material fact preclude summary judgment on the merits of Plaintiff's excessive force claim.

#### 1.   *Legal Standard*

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated if the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989).

Whether police officers' use of force is "excessive" must be judged by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and thus "determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396). A court must give "careful attention to the facts and circumstances of each particular case," including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In cases alleging that an officer handcuffed an arrestee in a manner that caused injury, "a plaintiff asserting a claim for excessive force need not always establish that [he] alerted an officer to the fact that [the] handcuffs were too tight or causing pain." *Cugini*, 941 F.3d at 613. Rather, the question is "whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Id.* "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled [his] distress, verbally or otherwise, such that a reasonable officer would have been aware of [his] pain, or both." *Id.* In making this inquiry, a court examines an officer's awareness "from the perspective of a reasonable officer on the scene." *Id.* (quoting *Graham*, 490 U.S. at 396).

Officers are liable not only if they use excessive force themselves, but also if they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019). To establish liability under a failure-to-intervene theory, a plaintiff must show that the defendant "(1) possessed actual knowledge that a fellow officer was using excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 221 (W.D.N.Y. 2012).

## 2. Discussion

The Court disagrees with Defendants' argument that no reasonable jury could find they used excessive force in handcuffing Plaintiff. Defendants argue that they were justified in placing handcuffs on Plaintiff, and that no reasonable jury could logically conclude that they were put on notice that the handcuffs were too tight or that Plaintiff sustained any injury during his arrest. At the outset, whether Defendants were justified in handcuffing Plaintiff is not determinative of whether they used excessive force in doing so. *See Cugini*, 941 F.3d at 616 (noting that the Second Circuit has "long rejected the principle that handcuffing is '*per se* reasonable'"). Moreover, for the reasons below, a jury could find that reasonable officers in Defendants' positions should have known that their method of handcuffing had caused Plaintiff injury or pain.

To begin, genuine disputes of material fact exist as to whether Defendants double locked the handcuffs in order to prevent them from tightening on Plaintiff's wrists. During his deposition, Plaintiff testified that Defendants did not do so. White Dep. Tr., ECF No. 53-1, at 89:3–89:8. If a jury were to find that Defendants failed to double lock the handcuffs, this could lead the jury to conclude that Defendants should have known that the handcuffs would tighten and cause Plaintiff pain. Although Defendants aver that Brown *did* ensure that the handcuffs were double locked, *see* Brown Aff. ¶ 25; Lu Aff., ECF No. 49-5, ¶ 22,[5] Plaintiff's testimony to the contrary creates a genuine issue of fact on this point. *See Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 442, 447 (D. Conn. 2013) (denying summary judgment in part because, based on plaintiff's statements that

---

[5] Defendants also rely on their body worn camera footage to support their argument that they ensured the handcuffs were double locked. Brown can be heard in the footage saying "flashlight" to Lu while in the process of handcuffing Plaintiff. Exs. E & F to Mot. Lu subsequently shined his flashlight on the handcuffs and, though a series of clicks can be heard, the footage does not show what Brown did to the handcuffs. A reasonable jury could conclude that these clicks were the sound of Brown double locking the handcuffs. Drawing all reasonable inferences in favor of Plaintiff at summary judgment, however, the Court cannot.

handcuffs kept tightening on him, a rational jury could find that defendant used excessive force by failing to double lock them).

Second, questions of material fact remain as to whether Plaintiff yelled from Lu's squad car to notify Defendants that the handcuffs were too tight, and whether Defendants could hear his pleas for help.  As noted, a plaintiff can establish that an officer reasonably should have known that his use of force during handcuffing was excessive if the plaintiff signals his distress verbally. *Cugini*, 941 F.3d at 613.  Plaintiff testified at his deposition that, when he tried to adjust himself in Lu's vehicle, "the handcuffs started to get tighter and tighter" on his wrists and he "started to yell and scream" for Defendants.  White Dep. Tr. at 91:17–91:24.  While Defendants aver that they did not hear Plaintiff yelling for help, *see* Brown Aff. ¶ 36; Lu Aff. ¶ 33, Plaintiff's testimony that he did so creates a genuine issue of fact material to the question of whether Plaintiff alerted Defendants that he was in distress.  *See Sharnick*, 935 F. Supp. 2d at 447 (denying summary judgment in part because a rational jury could find that defendants "did not stop the police cruiser when [the plaintiff] 'cried out' in pain").  Plaintiff also testified that Defendants returned to the vehicle to loosen his handcuffs after he yelled for help for several minutes.  White Dep. Tr. at 64:1–64:20.  Defendants implicitly dispute this assertion by averring that they did not hear Plaintiff's cries.  Given these conflicting versions of events, there is a genuine issue of material fact for the jury to decide.  Resolution of this question will turn on the parties' credibility, which renders summary judgment inappropriate.  *Kee*, 12 F.4th at 166 ("With respect to the evidence, at the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . for these are 'jury functions, not those of a judge.'" (quoting *Anderson*, 477 U.S. at 255)).

The Court is unpersuaded by Defendants' argument that body worn camera footage definitively demonstrates that, after being placed in Lu's cruiser, Plaintiff neither alerted Defendants that he was in pain or injured, nor complained about the fit of the handcuffs, ECF No. 49-1 at 12. Plaintiff testified that he yelled to Defendants for "about three to four minutes" after he was placed in Lu's vehicle. White Dep. Tr. at 21:4–21:10. Lu's body worn camera footage, Ex. F to Mot., extends for only ninety seconds after Brown shut the door to Lu's cruiser with Plaintiff inside. The footage then ends abruptly during a conversation Defendants were having with another emergency responder, while Lu was still at the scene of Plaintiff's arrest. Therefore, Lu's body worn camera footage does not extend long enough to conclusively show that Defendants did not hear Plaintiff yell for help during the three or four minutes after he was placed in Lu's cruiser. Nor, for that matter, does the footage necessarily undermine Plaintiff's contention that Defendants eventually returned to the cruiser to adjust the handcuffs.

Brown's body worn camera footage, Ex. E to Mot., extends several minutes longer but is likewise inconclusive on the issue of whether Defendants heard Plaintiff screaming for help. The footage shows that, after placing Plaintiff in Lu's cruiser, Brown stood near the cruiser for less than two minutes. During most of this time, he was in conversation with other emergency responders, while voices apparently transmitted via radio can be heard intermittently in the background. The Court, drawing all reasonable inferences in Plaintiff's favor, cannot rule out the possibility that Brown's conversation and the other background noise hindered the ability of the microphone on Brown's body worn camera to pick up Plaintiff's purported pleas for help during this portion of the footage. Then, after asking Lu to transport Plaintiff, Brown walked away from Lu's cruiser—approximately one minute and forty seconds after he shut the cruiser's door with Plaintiff inside—and went immediately to Plaintiff's vehicle to begin searching it. During the time

Brown was searching inside Plaintiff's vehicle, the audio in his body worn camera footage is clouded by static-like feedback, the rustling of items including a plastic grocery bag in Plaintiff's vehicle, and voices on Brown's radio. Drawing all reasonable inferences in Plaintiff's favor, this footage simply does not conclusively show that Defendants did not hear Plaintiff screaming for help.

Crucially, neither party has produced footage from *inside* the cruiser demonstrating whether Plaintiff screamed to Defendants for help and, for the reasons discussed above, the Court cannot discern from the officers' body worn camera footage whether he did so or whether Defendants heard these alleged cries for help.[6] Importantly, even during the time period when Defendants' body worn cameras were recording, the audio in the body camera footage is not necessarily coextensive with what Defendants heard. It is possible that Defendants could have heard something that their body cameras' microphones did not pick up.[7] Drawing all reasonable inferences in favor of Plaintiff, as the Court must at this stage, the parties' contradicting testimony regarding whether Plaintiff screamed and whether Defendants heard him creates genuine issues of fact precluding summary judgment.

These genuine disputes of fact also defeat Defendants' argument that, because they did not use excessive force, or even appear to do so, they cannot be held liable for failing to intervene to prevent the use of excessive force. In short, the Court's rejection of the foundation of this argument—that no reasonable jury could conclude that Defendants used excessive force to begin

---

[6] Plaintiff argues that Defendants spoliated footage from a camera inside Lu's cruiser and, therefore, he is entitled to an inference that the footage was unfavorable to Defendants. ECF No. 53-7 at 8–9. Even without deciding whether Defendants failed to properly preserve such footage, the genuine questions of material fact discussed in this section preclude summary judgment on Count Two. Accordingly, at this stage, the Court need not decide whether Defendants spoliated evidence. If necessary, the Court will address the issue of spoliation, and any possible resulting jury instruction, at the time of trial.

[7] The inconclusiveness of the body worn camera footage distinguishes this case from *Scott v. Harris*, 550 U.S. 372, 380–81 (2007), which Defendants cite for its holding that the lower court should not have relied on a plaintiff's version of events that were "so utterly discredited" by videotape evidence "that no reasonable jury could have believed him."

with—renders the argument toothless.  Because this is Defendants' only argument regarding their potential failure to intervene, summary judgment is unwarranted on this issue.

For these reasons, the Court denies Defendants' request for summary judgment with respect to the merits of Count Two.

### B.  Qualified Immunity

Having found that Defendants are not entitled to summary judgment with respect to the merits of Count Two, the Court turns to the question of whether they are nonetheless entitled to qualified immunity from this claim.  For the reasons below, the Court concludes that genuine issues of material fact preclude judgment as a matter of law on this issue.

#### 1.  Legal Standard

The doctrine of qualified immunity shields governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability while they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court has established a two-pronged test to determine whether defendants are entitled to qualified immunity.  Under the first prong, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  *Id.* at 232. Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  *Id.*  A court may use its discretion to decide

"which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "An official is therefore entitled to immunity if his action was 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)). In order for a right to be clearly established, there need not be "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 536 U.S. at 741. The settled law must also "be 'particularized' to the facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017), which "requires a high degree of specificity," *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted). By requiring the law to be clearly established to a particularized degree, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted). Thus, qualified immunity gives police officers "breathing room to make reasonable but mistaken judgments about open legal questions." *Id.*[8]

In determining at summary judgment whether a police officer is entitled to qualified immunity from a Fourth Amendment claim, the Court must assess whether "under clearly established law, every reasonable officer would have concluded that the defendant's actions

---

[8] The "matter of whether a right was clearly established at the pertinent time is a question of law." *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004). Whether an officer's conduct was objectively reasonable "is a mixed question of law and fact." *Id.* at 109.

violated the plaintiff's Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in the plaintiff's favor." *Cugini*, 941 F.3d at 615 (cleaned up) (quoting *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017)).  Put differently, summary judgment for the defendant "is required where 'the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances.'" *Id.* (cleaned up) (quoting *Simon v. City of New York*, 893 F.3d 83, 92 (2d Cir. 2018)).

### 2.  Discussion

With respect to the first prong of the qualified immunity analysis, the Court has already found that genuine issues of material fact remain as to whether Defendants violated Plaintiff's Fourth Amendment rights.  The Court will therefore proceed to the second prong to determine whether the right at issue was clearly established and, if so, whether it was nonetheless objectively reasonable for Defendants to believe their actions were lawful.  *See Cugini*, 941. F.3d at 615 (noting that a plaintiff who had raised sufficient disputes of fact on an excessive force claim to survive a motion for summary judgment had "established a Fourth Amendment violation for present purposes," and then proceeding to analyze the second prong of the qualified immunity analysis).

The Court holds that the genuine issues of material fact discussed above—including whether Plaintiff screamed in pain and whether Defendants heard such pleas—preclude it from deciding at summary judgment whether Defendants are immune from suit.  In reaching this holding, the Court relies on *Cugini*.  In *Cugini*, the Second Circuit held that, at the time of the June 26, 2014, arrest at issue in that case, "the use of excessive force in handcuffing was prohibited by clearly established constitutional law."  941 F.3d at 615.  The court cautioned, however, that it

could not base its analysis on a right defined at such "a high level of generality." *Id.* at 616.  The court then distinguished between the state of the law in cases where a plaintiff verbally alerted officers that handcuffs were causing him pain, on the one hand, and cases in which the plaintiff "exhibited only non-verbal aural and physical manifestations of her discomfort," on the other.  *Id.* The court concluded that, before its decision in *Cugini*, "the law at least left room for reasonable debate as to whether the plaintiff was required to alert the defendant to her pain, and, if so, whether her non-verbal behavior was sufficient to do so." *Id.* at 617.  When the arrest at issue in that case occurred, a reasonable officer could have concluded "that he was not required to respond to [the plaintiff's] non-verbal indications of discomfort and pain." *Id.*  Therefore, the court held that the plaintiff had failed to establish that the defendant violated a clearly established constitutional right. *Id.*  Notably, the Second Circuit decided *Cugini* in October of 2019.  The arrest that gives rise to Plaintiff's excessive force claim in this action occurred on October 12, 2017.  *See* Pl.'s L. R. 56(a)2 St. ¶ 4.  Thus, like the arrest at issue in *Cugini*, the arrest at issue here occurred before it was clearly established that officers could be held liable for using excessive force if a plaintiff exhibited only nonverbal indications of discomfort and pain resulting from handcuffing.

By contrast, it was clearly established at the time of Plaintiff's arrest in this case that, if officers used undue force in handcuffing an arrestee—and if the arrestee *verbally* alerted the officers that the handcuffs were causing him pain—then, the officers *could* be held liable under the Fourth Amendment.  *See Cugini*, 941 F.3d at 616–17.  Thus, if a jury were to find that Plaintiff verbally alerted Defendants that the handcuffs on his wrists were causing him pain, then Defendants would not be entitled to qualified immunity from his excessive force claim.  If, on the other hand, the jury were to find that Plaintiff did not verbally alert Defendants to such pain, then Defendants would be eligible for qualified immunity because they did not violate clearly

established law at the time.  Accordingly, the questions of material fact regarding whether Plaintiff verbally alerted Defendants that the handcuffs were causing him pain[9] preclude the Court from deciding, at this stage, whether Defendants violated clearly established law.

For similar reasons, the Court also cannot decide at this stage whether, even assuming the right at issue was clearly established, it was nonetheless reasonable for Defendants to believe that their acts were lawful.  As noted, questions of material fact remain as to whether Defendants double locked the handcuffs on Plaintiff's wrists, whether Defendants heard Plaintiff screaming for help, and whether Defendants ever loosened the handcuffs.  These issues all bear on the question of whether it would have been reasonable for Defendants to believe their actions were lawful.

For these reasons, the Court denies Defendants' motion to the extent it seeks summary judgment on Count Two on qualified immunity grounds.

## V.        COUNT FOUR:  ASSAULT AND BATTERY

The Court likewise denies summary judgment on Plaintiff's assault and battery claim.  To establish a claim for assault and battery, a plaintiff "must prove that defendants applied force or violence to [him] and that the application of force or violence was unlawful." *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999) (citing *Moriarty v. Lippe*, 294 A.2d 326, 335 (Conn. 1972)).[10]   Notably, "federal judges in Connecticut have assumed that Fourth Amendment

---

[9] As discussed above, Defendants' body worn camera footage is inconclusive on this issue and, thus, Defendants' citations to *Scott*, 550 U.S. 372, for the proposition that the footage warrants summary judgment are unavailing.  To the contrary, because Plaintiff and Defendants have provided differing versions of events, and because there is no footage or other record evidence that "utterly discredit[s]" Plaintiff's version of events, *see id.* at 380, the Court—viewing the facts and drawing reasonable inferences in the light most favorable to Plaintiff—must deny summary judgment.  *See id.* at 378 (in qualified immunity cases where a plaintiff and defendant have offered differing versions of events, the summary judgment standard "usually means adopting . . . the plaintiff's version of the facts").

[10] More specifically, "[a] civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another."  *Maselli v. Reg'l Sch. Dist. No. 10*, 235 A.3d 599, 612 (Conn. App. Ct. 2020).  "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  *Id.* at 613.

excessive force claims and state law assault and battery claims are functionally identical." *Muschette on behalf of A.M. v. Town of West Hartford*, No. 3:13-CV-1337 (RNC), 2020 WL 1452344, at *5 (D. Conn. Mar. 25, 2020); *see Outlaw v. City of Hartford*, No. 3:07-CV-01769, 2015 WL 13646918, at *1 (D. Conn. May 5, 2015) (noting that the "essential elements of a Fourth Amendment excessive-force claim and a state-law assault-and-battery claim are substantially identical" (citing *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991)).

Defendants' only argument regarding Count Four is that summary judgment is warranted because they did not use excessive force in handcuffing Plaintiff. As discussed above, however, genuine issues of material fact preclude summary judgment with respect to whether Defendants used excessive force. Importantly, Counts Two and Four arise from the same facts. Accordingly, because genuine issues of material fact preclude summary judgment on Count Two, summary judgment on Count Four is likewise unwarranted. *See Outlaw*, 2015 WL 13646918, at *1 (because genuine issues of material fact precluded summary judgment on excessive force claims, summary judgment on assault and battery claims arising from the same set of facts was also inappropriate); *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 80 (D. Conn. 2009) ("Because the Court has found that a genuine issue of material fact exists as to plaintiff's claim of excessive force, it necessarily follows that questions arise as to the reasonableness of defendants' use of physical force pursuant to state law.").

For these reasons, Defendants' motion is denied as to Count Four.

## VI.    COUNT SEVEN: NEGLIGENCE

Defendants advance two grounds for seeking summary judgment on Count Seven. First, they assert that the record does not establish that they acted negligently in handcuffing Plaintiff. Second, they assert that, even if they did act negligently, they are nonetheless protected from

liability by discretionary act immunity pursuant to Connecticut General Statutes § 52-557n.  The Court disagrees with both arguments.

    A.  <u>Merits of Plaintiff's Claim</u>

The Court first finds that questions of material fact preclude summary judgment on the merits of Plaintiff's negligence claim.  In order to prevail in a cause of action for negligence under Connecticut law, a plaintiff must establish four elements:  "duty; breach of that duty; causation; and actual injury."  *Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 263 A.3d 796, 804 (Conn. 2021).  Defendants do not dispute that they owed a duty to Plaintiff.  Instead, they assert that they were "acting well within the scope of their duties as police officers" in arresting Plaintiff and that the record does not establish that they used excessive force against Plaintiff.  ECF No. 49-1 at 16–17.  Both arguments are unpersuasive.

First, whether arresting Plaintiff was within the scope of Defendants' duties as police officers is not dispositive of whether they acted negligently in handcuffing Plaintiff.  In the negligence context, duty is "a legal conclusion about relationships between individuals"; the "nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual" at issue in a given case.  *Raspberry Junction Holding, LLC*, 263 A.3d at 804.  Thus, even if Defendants were fulfilling their law enforcement duties when arresting Plaintiff, they may still be held liable for breaching a duty to Plaintiff, as "duty" is used in the *negligence* context.

Next, as discussed above, genuine issues of material fact remain with respect to whether Defendants used excessive force.  These questions include whether Defendants failed to double lock the handcuffs on Plaintiff's wrists and whether Defendants heard Plaintiff screaming for help but failed to help him.  Were a jury to find in Plaintiff's favor on these factual questions,

Defendants could potentially be liable for negligence.  Therefore, these questions of fact defeat Defendants' argument that summary judgment is warranted on Plaintiff's negligence claim because they did not use excessive force.  *See Pateman v. City of White Plains*, No. 17-CV-6156 (KMK), 2020 WL 1497054, at *24 (S.D.N.Y. Mar. 25, 2020) (in case applying New York law, allowing negligence claim based on failure to double lock handcuffs to proceed after finding that genuine issues of material fact precluded summary judgment on excessive force claim arising from same handcuffing incident).

For these reasons, Defendants' motion is denied to the extent it seeks summary judgment on Count Seven on the ground that the record does not reflect that they acted negligently.

### B.  Discretionary Act Immunity

Having found that Defendants are not entitled to summary judgment on the merits of Plaintiff's negligence claim, the Court turns to whether Defendants are nonetheless entitled to discretionary act immunity pursuant to Connecticut General Statutes § 52-557n.  For the reasons below, the Court concludes that they are not.

Defendants claim that they are entitled to discretionary act immunity under Connecticut General Statutes § 52-557n(a)(2)(B).  Section 52-557n(a)(2)(B), however, states:  "(2) Except as otherwise provided by law, *a political subdivision of the state* shall not be liable for damages to person or property caused by: . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (emphasis added).  Thus, this section "addresses only the liability of a political subdivision of the state for the actions of its employees, not the liability of the individual officers themselves." *Villano v. Sacco*, No. 3:09-CV-1334 JCH, 2011 WL 1584851, at *8 n.4 (D. Conn. Apr. 26, 2011). By contrast, Connecticut *common law* provides immunity from suit to municipal employees for

certain discretionary acts.  *See Daley v. Kashmanian*, 280 A.3d 68, 77–78 (Conn. 2022).

Accordingly, Defendants cannot rely on section 52-557n(a)(2)(B) as a source of immunity from

Plaintiff's negligence claim.

Even if Defendants had argued that they are entitled to discretionary act immunity under

Connecticut common law, however, the Court would not grant summary judgment with respect to

Count Seven on that basis.  Connecticut common law recognizes three exceptions to discretionary

act immunity.  *See Fleming v. City of Bridgeport*, 935 A.2d 126, 147–48 (Conn. 2007).

Specifically, discretionary act immunity does not apply when "the circumstances make it apparent

to the public officer that his or her failure to act would be likely to subject an identifiable person

to imminent harm"; when "a statute specifically provides for a cause of action against

a municipality or municipal official for failure to enforce certain laws"; and when "the alleged acts

involve malice, wantonness or intent to injure, rather than negligence." *Id.* (citations and internal

quotation marks omitted).  If a plaintiff raises a genuine dispute of fact material to any of these

three exceptions, discretionary act immunity does not bar his action.  Here, Plaintiff asserts that

the first and third exceptions apply.  Upon review of the record, the Court finds that genuine issues

of fact material to both exceptions are present.  Thus, even if Defendants had properly asserted a

discretionary act immunity defense, the Court would not grant summary judgment on this ground.

First, questions of material fact remain as to whether the circumstances of Plaintiff's arrest

and handcuffing made it apparent to Defendants that their failure to act would likely subject

Plaintiff to imminent harm.  As noted, genuine issues of fact remain with respect to whether

Plaintiff complained from Lu's police vehicle, whether Defendants heard any such complaints,

whether Defendants double locked the handcuffs they applied to Plaintiff, and whether Defendants

subsequently loosened the handcuffs.  These issues are material to the first exception to

discretionary act immunity because, if a jury were to find these facts in Plaintiff's favor, it might likewise find that the circumstances at issue here made it apparent to Defendants that, by failing to double lock or promptly loosen Plaintiff's handcuffs, they were likely subjecting Plaintiff to imminent harm.

Similarly, genuine issues of material fact remain as to whether the conduct alleged in Plaintiff's complaint involved malice, wantonness, or intent to injure, rather than negligence. Plaintiff has testified that after he complained that the handcuffs were causing him pain, Defendants laughed at him and ignored his pleas for help.  Pl.'s L. R. 56(a)2 St. ¶¶ 31, 38.  This testimony raises questions of material fact regarding whether Defendants acted with malice, wantonness, or intent to injure in applying handcuffs to Plaintiff's wrists.

For these reasons, Defendants' motion for summary judgment on Count Seven is denied.[11]

## VII.   MALICIOUS PROSECUTION

Finally, the Court rejects Plaintiff's attempt to proceed on a theory of malicious prosecution, a claim he raises for the first time in his opposition to Defendants' motion for summary judgment.  A plaintiff "may not assert a claim for the first time in opposition to a motion for summary judgment." *Vitti v. Macy's Inc.*, 758 F. App'x 153, 158 (2d Cir. 2018) (summary order); *see Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (holding that the district court properly dismissed a claim first raised in opposition to a motion for summary judgment without considering the merits of that claim); *Flowers v. Conn. Light & Power Co.*, 774 F. App'x 33, 36 (2d Cir. 2019) (summary order) (similar); *see also Shah v. Helen Hayes Hosp.*, 252 F. App'x

---

[11] Plaintiff also argues that questions of material fact remain as to whether the handcuffing at issue here constituted a "discretionary" or "ministerial" act, but his argument on this point fails to state precisely why this is so.  Earlier in this action, Plaintiff filed a general order of the Orange Police Department regarding its "Handcuff and Restraint Policy," which purportedly requires that all handcuffs be double locked.  ECF No. 21 at 9.  Plaintiff has not, however, referenced this general order in his briefing; nor has he included the general order as part of the summary judgment record.  Accordingly, the Court will address this issue no further.

364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."). Accordingly, the Court will not permit Plaintiff's newly asserted malicious prosecution claim to proceed.

The Court is unconvinced by Plaintiff's argument that he has been asserting a malicious prosecution claim all along that went unrecognized by the Court in its initial review order and by Defendants in their summary judgment motion. In making this argument, Plaintiff points to allegations in his complaint that his arrest constituted an "unreasonable seizure," Am. Compl. ¶ 46, and that a Connecticut state court dismissed the charges against him when he was arraigned, *id.* ¶ 48. But, while a complaint "need not correctly plead every legal theory supporting the claim," a plaintiff must, at the very least, "set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000). Here, the allegations Plaintiff references fall far short of providing Defendants adequate notice that he was attempting to assert a malicious prosecution claim.

Plaintiff's failure to raise his proposed malicious prosecution claim at an earlier stage of this litigation is particularly inexcusable because he has been represented by counsel since October of 2021. *See* ECF No. 32. Plaintiff's counsel has now had access to the Court's initial review order, which clearly set forth the claims that were proceeding in this action, for approximately fifteen months. Yet, at no time has Plaintiff ever moved to amend his complaint to explicitly assert a malicious prosecution claim; nor, prior to filing his opposition to summary judgment, did he ever

assert that the Court failed to recognize a malicious prosecution claim in its initial review order.[12] Accordingly, Defendants were justified in relying on the Court's initial review order to lay out the claims at issue in this action, and they would be highly prejudiced if Plaintiff were allowed to proceed with a claim for malicious prosecution raised for the first time at this late stage. *See Beckman*, 79 F. Supp. 2d at 407 (noting that, because "a failure to assert a claim until the last minute will inevitably prejudice the defendant," several courts in this Circuit have ruled that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment" (collecting cases)).

For these reasons, the Court declines Plaintiff's request to proceed on the malicious prosecution claim that he has asserted for the first time in his opposition to Defendants' motion.

---

[12] Both Plaintiff and his counsel should have been particularly attuned to ensuring that they expressly asserted all claims Plaintiff intended to advance because of their experience in another case in this District a few years ago. In *White v. Doe*, No. 3:16-cv-1874, which involved both Plaintiff and his present counsel, Plaintiff attempted to assert a claim for the first time at the summary judgment stage. In that case, the district court allowed Plaintiff's claim to proceed, finding that he had "expressly alleged" the claim in his complaint and that it was "error" for the court's initial review order "not to acknowledge or address" that claim. *Id.*, ECF No. 169. The court further found that the defendant against whom Plaintiff was asserting the claim would "not be unfairly prejudiced by having to respond to the . . . claim in light of its substantial evidentiary and legal overlap with" another claim in that action. *Id.* Here, by contrast, Plaintiff did not expressly allege a malicious prosecution claim in his complaint and the Court is unconvinced that there is a significant evidentiary and legal overlap between that claim and his other claims in this action such that Defendants would not be prejudiced by its inclusion at this late stage. Just because Plaintiff was allowed to make a late-breaking change to claims in the earlier *White* action does not mean he should have assumed he could do so here.

## VIII.   CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment is DENIED. The Court will convene a conference with the parties to set a trial date and deadlines for pretrial submissions with respect to Plaintiff's excessive force claim in Count Two, assault and battery claim in Count Four, and negligence claim in Count Seven.

**SO ORDERED** at Hartford, Connecticut, this 13th day of February, 2023.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE